JUDGE'S COPY

**District Court of the United States**
**Middle District of Pennsylvania**

# 1 : CV - 01 - 0867

Corey Lorenzo Woodfolk,

     Petitioner,

v.

UNITED STATES OF AMERICA,
Donald Romine

     Respondent.

_____/

Case No.

**Great Writ of Habeas Corpus,**
pursuant to: Art. I, § 9, cl.
2 of the Constitution of the
United States // § 377, 36 Stat.
1156, 1162 // § 451-53 (R.S. §§
751-53) // § 454, (R.S. § 754) //
§§ 455-61, (R.S. § 755-61) //
14 Stat. 385 // Art. III, § 2, cl.
1 of the Constitution.

**FILED**
HARRISBURG. PA

MAY 1 7 2001

MARY E. D'ANDREA, CLERK
Per _____
     Deputy Clerk

This day came the Petitioner (Corey Lorenzo Woodfolk) hereinafter **Petitioner**,
by Special Visitation, in propria persona, and respectfully submits this Petition
for 'Writ of Habeas Corpus Relief'. Petitioner prays this Honorable court grant this
Writ forthwith and issue an "Order" for Donald Romine — agent of the UNITED STATES
OF AMERICA, hereinafter **Respondent**, to show cause as to why [t]his court should not
grant the Relief herein requested, and in the absence of such response, concede to
the claims herein presented. Petitioner asserts that Respondent is unlawfully res-
training Petitioner's personal Liberty and property — his physical body, under
color of law/authority; and being detained against his will at United States Peni-
tentiary Lewisburg, Pennsylvania. Petitioner demands his immediate release.

**Jurisdiction:**

    Jurisdiction is pursuant to: Art I, § 9, cl. 2 of the Constitution of the United
States; § 377, 36 Stat. 1156, 1162; § 451-53, (R.S. §§ 751-53; § 454, (R.S. § 754);
§§ 455-61, (R.S. §§ 755-61); 14 Stat. 385; this cause of action "arises under" Art.
III, § 2, cl. 1 of the Constitution; 84 Stat. 1260 and 84 Stat. 1265; § 2(a), 94 Stat.

1  2369.

2  **Standing:**

3      Petitioner asserts that he is a principal Citizen of the several State of

4  Maryland, as noted therein Art. I of the Declaration of Rights for the Constitu-

5  tion of Maryland; this American Citizenship is with the meaning of Art. III of the

6  Constitution. And whereas Maryland extends like comity to "citizens of the United

7  States," such reciprocation is to be extended to now Citizen of Maryland. Petitioner

8  asserts that he has a significant personal stake in the outcome of this action, as

9  his personal Liberty is being prejudicially restrained and his inalienable rights

10  are being violated by the application of 84 Stat. 1260 and 84 Stat. 1265, and that

11  said statutes have been set in motion against Petitioner. Wherefore, Petitioner

12  calls into question the validity of said statutes by the "Judicial Power". [1]

13  **Standard of Review:**

14      Petitioner respectfully prays for a liberal construction. See FRCP 8(f);

15  **Haines v. Kerner**, 404 US 519. "In behalf of the unfortunates, federal courts should

16  act in doing justice if the record makes plain a right to relief." **United States v.**

17  **Morgan**, 74 S.Ct. 247. Petitioner asserts that this petition is not to be recharac-

18  terized pursuant to 28 U.S.C. § 2255, see **Mason v. Myers**, 208 F.3d 414 (3rd Cir.

19  2000), however, if this court determines that relief may be afforded by writ of

20  error coram nobis, audita querela or any other means of available relief unknown to

21  Petitioner, then this Honorable court should so fashion appropriate remedy in light

22  of the arguments herein presented.

23  **Procedural History:**

24      On April 5, 1994, Petitioner and three co-defendants were named in a ten count

25  

26  [1] The "Judicial Power" therein Art. III, should not be confused with the judicial power to adjudicate
in the manner of the courts —Art. IV. See Freytag v. Commissioner, 501 US —, 115 L.Ed 2d 764,

27  @ B 798.

28

1    superseding indictment. Petitioner was charged as follows: Count One: distribu-

2    tion and possession with intent to [distribute] heroin, all in violation of

3    21 U.S.C. § 841(a)(1); the ambiguous language of § 846 was incorporated into the

4    body of the indictment; Count Two, Five, and Seven: Distribution of heroin, in

5    violation of 21 U.S.C. § 841(a)(1); Count Ten: convicted felon in possession of

6    a weapon, in violation of 18 U.S.C. § 922(g)(1).

7        On September 13, 1994, Petitioner [appeared] before the Honorable J. Frederick

8    Motz, and pursuant to a written plea agreement, plead guilty to count one, ante.

9        Sentencing was commenced on November 10, Anno domini 1994, and the court sen-

10   tenced Petitioner to a term of 50 years imprisonment.

11       A timely Notice of Appeal was filed. On June 17, 1996, the United States Court

12   of Appeals for the Fourth Circuit, affirmed the district court's judgement. A peti-

13   tion for writ of certiorari ensued and was denied by the United States Supreme

14   Court on November 4, 1997.

15       On November 6, 1997 Petitioner filed a motion to vacate and set aside sen-

16   tence/conviction pursuant to 28 U.S.C. § 2255, Civil No. JFM-97-3737. On January 21,

17   1999, the district court denied Petitioner's § 2255 motion. A timely Notice of

18   Appeal was filed to the Fourth Circuit Court of Appeals which was denied, as well

19   as en banc consideration.

20       On March 30, Anno domini 2001, Petitioner appealed to the United States Court of

21   Appeals for the Fourth Circuit for leave to file a second or successive motion

22   pursuant to § 2255. The clerk for said Court docketed Petitioner's request for au-

23   thorization, Court's No. 01-707, see attached document — **Exhibit A.** On April 26,

24   2001, the Fourth Circuit Court of Appeals **denied** Petitioner's authorization to file

25   a successive § 2255 motion without opinion. See attached **Exhibit B.**

26   **Court's Authority:**

27

28

1    A motion under § 2255 is inadequate or ineffective only where it is

2    established " ' that some limitation of scope or procedure would prevent a §

3    2255 proceeding from affording the prisoner a full hearing and adjudication of

4    his claim of wrongful detention.' " See Application of **Galante**, 437 F.2d 1164,

5    1165 (1971) (quoting **United States ex rel. Leguillou v. Davis**, 212 F.2d 681, 684

6    (3rd Cir. 1954)). As Petitioner has filed a § 2255 motion, and has been **denied**

7    authorization to file a second § 2255 motion, ante, Petitioner contends that 28

8    U.S.C. § 2255 provides an inadequate remedy. Petitioner asserts that his claims are

9    properly raised pursuant to the jurisdictional authority, ante, and that for this

10   court to refuse its jurisdictional authority where Petitioner cannot utilize § 2255

11   would raise serious constitutional questions. See **United States v. Triestman**,

12   124 F.3d 361 (2nd Cir. 1997). And as the Court stated in **United States v. Hayman**,

13   72 S. Ct. 263 (1952) ( "Nowhere in the history of § 2255 do we find any purpose to

14   impinge upon prisoner's rights of collateral attack upon their convictions.")

15   Petitioner contents that if his claim that he has been convicted and

16   imprisoned for conduct that has not been lawfully made criminal and other claims

17   of right resulting from violations of inalienable rights and constitutional pro-

18   tections, see **syllabus**, infra, and such cannot be heard by the district court,

19   then § 2255 as amended by the AEDPA is unconstitutional as a violation of [inter

20   alia] the Due Process Clause of the Fifth Amendment and/or the Suspension Clause

21   of Art. I, § 9, cl. 2 of the Constitution. It was noted in **In Re Dorsainvil**, 119

22   F.3d 245 (3rd Cir. 1997) (In "reviewing the history of § 2241, the Court [**Felker**,

23   infra] observed that in the 1996 Act, Congress had not expressly referred to the

24   Court's longstanding authority to entertain a petition for habeas corpus, and sta-

25   ted that "[r]epeals by implication are not favored." Id. at —. 116 S. Ct. @ 2338.

26

27

28

4.

1  Thus, in **Felker**, as in its decision more than a century earlier in **Ex parte**

2  **Yerger**, 8 Wall. 85, 19 L.Ed 332 (1869), the Court specifically "declin[ed] to

3  find a ... repeal of § 2241 of Title 28 ... by implication." See **Felker v.**

4  **Turpin**, 116 S.Ct. 2333 (1996). See, **Harris v. United States**, ____F.Supp. 2d____,

5  2000 WL 1641073 (D.N.J. 2000) ( held " § 2241 is the proper remedy to challenge a

6  conviction based on rule announced in **Apprendi**, infra, where gate keeping provi-

7  sions for successive motion per  § 2255 bar filing of a successive motion under §

8  2255.

9      * Petitioner avers that the attached documents — Exhibits, were issued in

10  compliance with law. FRCP 9(d).

11

12

13  **Syllabus:**

14

15      Petitioner asserts that in light of **Apprendi v. New Jersy**, infra, his convic-

16  tion and sentence must be vacated where the penalty subsection — § 841(B)(1)(A),

17  was not present in his indictment nor the requisite elements to constitute conspi-

18  racy; further Petitioner's indictment failed to charge the necessary statute for

19  conspiracy, and that his counsels were ineffective in light of the aforesaid; (2)

20  In failing to promulgate necessary implementing regulations for 84 Stat. 1260 and

21  84 Stat. 1265, codifications @ 21 U.S.C. §§ 841(a), 846, as mandated by the

22  Federal Register and Administrative Procedure Acts, infra, the government violated

23  Petitioner's fifth and sixth amendment federally recognized and protected consti-

24  tutional rights, [et sic], presented no "case or controversy", absent requisite

25  casual connection between the injury and the conduct complained of — the alleged

26  injury was not fairly traceable to the challenged action of Petitioner;

27  Consequently, in light of the foregoing, Petitioner was conclusively denied

28

effective assistance of counsel, and his guilty plea was obtained in violation
of due process of law as a consequence thereof.

Petitioner maintains that his claims as asserted herein present a "case and
controversy" within the meaning of Art. III, § 2, cl. 1 of the Constitution.

> **Petitioner's recognized and protected fifth and sixth amendment federal
> constitutional rights were violated where the government failed to
> include the penalty phases of 21 U.S.C. § 841(b)(1)(A) nor the elements
> that constitute conspiracy in Petitioner's indictment**

### Claim I

Anticipating that the government will argue that **Apprendi v. New Jersy**,
120 S. Ct. 2348 (2000), does not apply retroactively to cases on collateral review,
Petitioner will address the retroactivity argument at this time.

Petitioner contends that the rule announced in **Teague v. Lane**, 489 US 288
(1989), would not apply because the rule announced in **Apprendi**, supra, is sub-
stantive rather than procedural. **Teague**, supra, by its terms applies only when
the Supreme Court announces a new rule of criminal **procedure. Caspari v. Bohlen**,
510 US 383 (1994); **Bousley v. United States**, 523 US 614 (1998). See **Davis v.
United States**, 417 US 333 (1974) (held "in deciding whether a petitioner's mounting
a collateral attack on his conviction should be given the benefit of a case decided
after his conviction, "the appropriate inquiry [is] whether the claimed error of
law was a fundamental defect which inherently results in a complete miscarriage of
justice," and whether it present[s] exceptional circumstances where the need for
the remedy afforded by collateral relief is apparent.") The continued vitality of
**Davis**, supra, is not affected by **Teague**, as Teague clearly applies only to new
rules of procedural law. The Apprendi decision alters what the government must
prove and the standard of proof in cases in which the government seeks to impose

6.

1  an increased statutory sentence under 21 U.S.C. § 841(b)(1)(A) or (B).  In those cases

2  under 21 U.S.C. § 841 in which the Government seeks to increase the statutory

3  sentence in excess of that provided in § 841(b)(1)(C), the Government must allege

4  the factors set forth in 21 U.S.C. § 841(b)(1)(A)-(B) in the Indictment and the jury

5  must find these factors beyond a reasonable doubt.  Accordingly, **Appredi**, creates a

6  new rule of substantive criminal law, which is not subject to the **Teague** analyses set

7  forth, ante.

8      In the event this court determines that the rule of **Apprendi** is a new rule of

9  procedural law, **Teague** still does not prohibit retroactive application.  There are

10  two (2) exceptions to the rule announced in **Teague** that permit the retroactive

11  application of a new procedural rule:  (1) when the rule places certain kinds of

12  primary, private individual conduct beyond the power of the criminal lawmaking

13  authority to proscribe, or otherwise prohibits imposition of a certain type of

14  punishment, for a class of defendants because of their status or offense; or (2)

15  when the rule announces a new "watershed" rule of criminal procedure implicating

16  the fundamental fairness and accuracy of the criminal proceeding.  **Caspari**, 510 U.S.

17  at 396, 114 S.Ct at 956-57.  As set forth in **Teague**, "a new rule should be applied

18  retroactively if it requires observance of 'those procedures that ... are implicit

19  in the concept of ordered liberty.'"  **Teague**, 489 US at 306.  Thus, even if this

20  court determines that **Apprendi** sets forth a new rule of constitutional procedural

21  law, the second exception to **Teague** would permit the court to apply **Apprendi**

22  retroactively.  At the minimum, the rule announced in **Apprendi** requires the Government

23  to allege drug amount in the Indictment, submit it to the jury and establish it beyond

24  a reasonable doubt in order to impose the enhanced penalties set forth in 21 U.S.C. §

25  841(b)(1)(A) or (B).  These new requirements will radically change federal drug

26  prosecutions in the United States, especially in conspiracy cases.  The Government

27

28

1   will no longer be able to impose increased statutory penalties without pro-

2   ving the drug amount required to trigger the enhanced penalties under §

3   841(b). Therefore, the second exception to Teague applies and the Apprendi

4   decision should be given retroactive application to cases on collateral review.

5       Accordingly, it is essential to the validity of a conviction, not only that

6   the court have jurisdiction of the crime, but also that its jurisdiction

7   be illustrative of some authoritive law. Ergo, if the crime in which the defendant

8   stands convicted is one for which he could be held to answer only upon the pre-

9   sentment or indictment of a grand jury, and it is later discovered that he is

10  charged for crimes of which the grand jury never returned an indictment, his

11  conviction is void ab initio, and may be released on habeas corpus relief.

12  **Ex parte Bain**, 121 US 1 (1887); **Ex parte Wilson**, 114 US 417 (1885). In **Apprendi**,

13  supra, the Supreme Court held that a fact which increases the congressionally

14  prescribed statutory maximum penalty to which a criminal defendant is exposed must

15  be charged in the indictment, submitted to the jury and proven beyond a reasonable

16  doubt. See **United States v. Murphy**, No. 4-95-10380, SDFLN, 2000 WL 1140782 (D.

17  Minn.)

18      In the case at bar, the indictment of which Petitioner is charged —

19  JFM-93-0419, omits the necessary subsection 841(b)(1)(A). Moreover, Petitioner

20  asserts that the language in his indictment — one kilogram of heroin — was

21  never submitted to the grand jury for their determination. See grand jury minutes

22  of key government witness Givette Hogan, **Adopted by Reference**, FRCP 10(c). At

23  no period in the grand jury proceedings does the government proffer evidence of

24  a kilogram or more of heroin nor is the grand jury charged with finding before the

25  returning of indictment that a kilogram or more of heroin must have sold. Also see

26  testimony of Sgt. Gerald M. Kreiner, special grand jury proceedings, on March 22,

27  1994, and April 5, 1994, **Adopted by Reference**. Id. See **United States v. Edrington**,

28

726 F.2d 1029 (5th Cir. 1984) (guilty plea does not waive jurisdictional de-
fects such as failure of indictment to allege all essential elements of the
offense); **United States v. Macklin**, 523 F.2d 193 (2nd Cir. 1975); **In re Win-
ship**, 397 US 358 (1970) ([T]he Due Process Clause protects the accused against con-
viction except upon proof beyond reasonable doubt of every fact necessary to con-
stitute the crime with which he is charged.) Id. The indictment serves "as a
link between the grand jury's considerations and the prosecutor's case at trial."
**United States v. Piccolo**, 696 F.2d 1162 (6th Cir.), vacated on other grounds, 705
F.2d 800 (1983). It serves as a check on the prosecutor, designed to prevent him
or her "from modifying the theory and evidence upon which the indictment is based."
Id. To allow Petitioner to stand convicted for elements — necessary weight of
controlled substance — not presented to a grand jury for their determination,
violates due process, and such omission cannot be constructively amended by the
prosecution nor the court. **Stirone v. United States,** 361 US, at 257 (1960).
Ever since **Ex parte Bain**, 121 US 1 (1887), was decided, it has been the rule that
after an indictment has been returned its charges may not be broadened through
amendment except by the grand jury itself. Petitioner further asserts that in
keeping with the sound reasoning of constitutional jurisprudence expressed by
Justice Thomas, of which Justice Scalia joined concurring, any fact that is by law
a basis for imposing increased punishment is an "element" and must be submitted
to a grand jury for their determination. **Apprendi**, supra. ("Two years after **Hope v.
Commonwealth**, 50 Mass. 134 (1845), the court elaborated on this rule in a case in-
volving burglary, stating that if "certain acts are, by force of the statutes, made
punishable with greater severity, when accompanied with aggravating circumstances,"
then the statute has "creat[ed] two grades of crime." **Larned v. Commonwealth**, 53
Mass. 240, 242 (1847).") Id., Part II. Conversely, where a fact was not the basis
for punishment, that fact was, for that reason, not an element. An 1872 treatise

1  by one of the leading authorities of the era in criminal law and procedure con-

2  firms the common-law understanding that the before stated cases demonstrate. The

3  treatise condensed the traditional understanding regarding the indictment, and

4  thus regarding the elements of a crime, to the following: "The indictment must

5  allege whatever is in law essential to the punishment sought to be inflicted."

6  1 J. **Bishop, Law of Criminal Procedure 50** (2d ed. 1872). See id., § 81, at 51 (

7  "[T]he indictment must contain an allegation of every fact which is legally essen-

8  tial to the punishment to be inflicted"); id., § 540, at 330 ("[T]he indictment must

9  ... contain an averment of every particular thing which enters into the punishment").

10  Crimes, he explained, consist of those "acts to which the law affixes ... punish-

11  ment," id., § 80, at 51, or stated differently, a crime consists of the whole of

12  "the wrong upon which the punishment is based," id., § 84, at 53. The constitutional

13  provisions provided further support, in his view, because of the requirements for

14  a proper accusation at common law and because of the common-law understanding that

15  a proper jury trial required proper accusation: "The idea of a jury trial, as it

16  has always been known where the common law prevails, includes the allegation, as part

17  of the machinery of the trial... . [A]n accusation which lacks any particular

18  fact which the law makes essential to the punishment is ... no accusation within the

19  requirements of the common law, and it is no accusation in reason." **1 Bishop, Crimi-**

20  **nal Procedure** § 87, at 55. See id., § 88, at 56 (notice and indictment requirements

21  ensure that before "persons held for crimes ... shall be convicted, there shall be

22  an allegation made against them of every element of crime which the law makes essen-

23  tial to the punishment to be inflicted."). Numerous high courts contemporaneously

24  and explicitly agreed that Bishop had accurately captured the common law understan-

25  ding of what facts are elements of a crime. See, e.g., **Hobbs v. State,** 44 Tex. 353,

26  354 (1875); **Maguire v. State,** 47 Md. 485, 497 (1878); **Larney v. Cleveland,** 34 Ohio

27  St. 599, 600 (1878); **State v. Hayward,** 83 Mo. 299, 307 (1884); **United States v.**

28  **Reese,** 92 US 214, 232-233 (1876). Accordingly, Petitioner asserts that his sen-

1 tence was predicated on facts which constituted elements, to wit, role in the

2 offense, restraint of victim, weapons possession, alleged killing, etc., but

3 none of which was charged in the indictment nor found by a reasonable doubt

4 submitted to a petite jury. On the contrary, Judge Motz, specifically stated:

5 "You are asking for a life sentence based upon factors as to which neither defen-

6 dant has been found guilty beyond a reasonable doubt. I mean even the things we

7 have discussed that concern me, and let's break them down. You've got Star Cleaners.

8 I think it happened. I am going to take it into account when I sentence. I think I

9 should. On the other hand, that would be a tough case to prosecute. ... But the

10 question is, but the real question is, the tough question is, to be asking for life

11 imprisonment, when a man or woman really hasn't ever had a trial, and even the

12 necessity of proof beyond a reasonable doubt on the factors that are adjusted."

13 See Sentencing Transcripts of Corey Lorenzo Woodfolk, on November 10, 1994,

14 p. 646, lines 1-25. **Adopted by Reference.** Petitioner asserts that the government

15 subjected him to factors which the law makes essential to the punishment, but was

16 not afforded the protection of a grand jury determination nor was such charged in

17 his indictment, but only found by a preponderance of the evidence. All of which

18 violated Petitioner's fifth and sixth amendment rights to "due process" of law.

19 The Fifth Amendment Grand Jury Clause and the Sixth Amendment guarantee of notice

20 and jury trial indisputably entitles a criminal defendant to a "jury determination

21 that [he] is guilty of every element of the crime with which he is charged — be-

22 yond a reasonable doubt." **United States v. Gaudin**, 515 US 506 (1995); **Sullivan v.**

23 **Louisiana**, 508 US 275 (1993). Had not Petitioner been made subject to the afore-

24 said factors — that had not been presented to the grand jury nor charged in the

25 indictment — in light of the foregoing reasoning and dictates of constitutional

26 compulsion, would not have been subject to a conviction absent such nor a sentence

27 of 50 years. In consulting the sentencing guidelines, and even if the government

28

would have been able to prove a kilogram of heroin, of which Petitioner does

not maintain, he would have only been subject to level 32 which is, 120 Months —

10 Years. Other courts have adopted this reasoning in light of **Apprendi**. See, e.g.,

**United States v. Norris**, 128 F.Supp. 2d 739 (E.D.N.Y. 2001) (Defendant's consti-

tutional right to jury determination of every element of charged crime beyond rea-

sonable doubt prohibited court from increasing defendant's sentence beyond the

maximum fixed by the sentencing guidelines for the elements of the crime alleged in

the indictment to which he pleaded guilty. ... "The Sentencing Commission's func-

tion is not to guide or give advice to a federal court; it is to promulgate provi-

sions, that is, laws that, unless they are unconstitutional, the federal courts are

bound by law to follow on pain of being reversed. 18 U.S.C. § 3742. ... Whatever

may be said about the merits of Mistretta'a conclusions that in creating the Sen-

tencing Commission the Congress neither delegated "excessive legislative power",

nor "upset the constitutionally mandated balance of power among the coordinate Bran-

ches , id. 488 US, at 412, the majority opinion made no mention of the effect, if

any, of the Guidelines on "private rights."... Does an individual accused of crime

have a right to a jury trial and a right to require the government to prove beyond

a reasonable doubt every fact necessary to constitute the crime fixed by binding law?

Since the maximum fixed by the Guidelines is binding as a matter of law, the answer

can hardly be in doubt.") That Petitioner was able to be sentenced to a term of

50 years imprisonment — 40 years more than the guidelines allow, absent factors

considered only by a preponderance of the evidence, is draconian and repugnant to

the Constitution and violative of due process. Wherefore, in light of **Apprendi**,

and other before stated authority, the conviction and sentence imposed against Pe-

titioner must be vacated and set aside, and Petitioner must be released forthwith.

**Point I**

Petitioner asserts that the government failed to charge the necessary elements

1 which constitute conspiracy in the indictment nor was such presented to the
2 grand jury. See attached **Exihibit C.** The Court in **United States v. Thompson,** 533
3 F.2d 1006 (3rd Cir. 1976), noted the requisite elements which constitute conspi-
4 racy — (1) conspiracy described in the indictment was "willfully" formed, ...;
5 (2) the accused willfully became a member of the conspiracy. ...; The fact that
6 Petitioner's indictment omits necessary references above, constitutes omission of
7 two very necessary elements of the charged crime. See **United States v. Gregg,** 557
8 F.Supp. 1134 (1983). And a guilty plea is not, however, an admission of essential
9 elements not charged in the indictment. **Boykin v. Alabama,** 395 US 238 (1969). "The
10 absence of an indictment is a jurisdictional defect which deprives the court of its
11 power to act." **Macklin,** supra; **Smith v. United States,** 360 US, at 10. The fact of
12 such omission violated Petitioner's fifth and sixth amendment federal constitutional
13 rights — it charged no crime and provided no notice, and consequently the court was
14 without requisite subject-matter jurisdiction of § 846. Moreover, in consulting
15 Petitioner's indictment, nowhere in the body of Count (one) or any other count, was
16 Petitioner charged with 21 U.S.C. § 846. A close look concludes the obvious. See **Ex-**
17 **hibit C.** It clearly states that Petitioner conspired to distribute heroin in viola-
18 tion of 841(a)(1). The body of Count (one) is completely devoid of 21 U.S.C. § 846.
19 It is asserted that there are several enactments of conspiracy of which one may be
20 charged, e.g., 18 U.S.C. § 371, or 21 U.S.C. § 963. How is the court, trial counsel,
21 or Petitioner able to determine what Statute of conspiracy the grand jury found. The
22 omission of the necessary statute with regard to conspiracy is fatal. And of course
23 constructive amendment is unexceptable. **Stirone,** ante. The government cannot arbi-
24 trarily decide as to what charge it may pursue, absent the requisite finding of a
25 grand jury. In consulting 18 U.S.C. § 371, it states in pertinent parts — of which
26 proves interesting: "if two or more persons conspire either to commit any offense
27 against the United States, ... each shall be fined under this title or imprisoned
28

1  not more than five years, or both." Accordingly, one sentenced by a federal

2  court to imprisonment for an infamous crime without indictment or present-

3  ment by a grand jury, as required by the fifth amendment of the Constitution,

4  has been held to be entitled to his discharge on habeas corpus. **Ex parte Wilson,**

5  supra. And "ambiguity concerning the ambit of criminal statutes should be resolved

6  in favor of lenity." **Rewis v. United States,** 401 US 808 (1971); **United States v.**

7  **Bass,** 404 US 336 (1971). Ultimately, in failing to enforce the requirement that

8  a defendant be convicted on charges considered and found by a grand jury, **Hooker**

9  **v. United States,** 841 F.2d 1225, 1230 (4th Cir. 1988), would allow a court to

10 "guess as to what was in the minds of the grand jury at the time they returned the

11 indictment. ..." **United States v. Keith,** 605 F.2d 462 (9th Cir. 1979) (citing

12 **Russell v. United States,** 369 US 749 (1962)). Such guessing would "deprive the

13 defendant of a basic protection that the grand jury was designed to secure," by

14 allowing a defendant to be convicted "on the basis of facts not found by, and per-

15 haps not even presented to, the grand jury that indicted him." Id. (citing **Rus-**

16 **sell,** 369 US, at 770). Petitioner asserts that his indictment failed to charge

17 him with a specific statute for conspiracy, and is only left to guess as to what

18 statute the grand jury found. A constructive amendment of an indictment is a per se

19 violation of the Grand Jury Clause of the Fifth Amendment "that requires reversal

20 even without a showing of prejudice to the defendant." **United States v. Wozniak,**

21 126 F.3d 105 (2nd Cir. 1997) (quoting **United States v. Clemente,** 22 F.3d at 482

22 (2nd Cir. 1994)). Petitioner further asserts that his guilty plea was not knowing,

23 willful, intelligent nor voluntary as it was obtained in violation of due process

24 and is therefore **void. McCarthy v. United States,** 394 US 459. Petitioner's claim

25 of an involuntary, unknowing, unintelligent, involuntary guilty plea is predicated

26 upon all of the foregoing assertions in Claim I, **Adopted by Reference.** Petitioner

27

28

1   asserts a claim of ineffective assistance of counsel pre-trial and at the

2   appellate level and such assertion is predicated on all of the foregoing

3   assertions of Petitioner in Claim I, and within the strictures of **Strickland v.**

4   **Washington**, 466 US 668. This adoption by reference is for brevity and in light

5   of the court's patience and superior knowledge. Wherefore, Petitioner respectfully

6   makes a demand for his immediate release.

7

8         **Petitioner's fifth and sixth amendment federal constitutional rights**
          **were violated where the government failed to comply with the rule**
9         **making authority**

10                              **Claim II**

11

12      Petitioner will appeal to the superior knowledge of this Honorable court, and

13   dispense with technical language [in law and fact] of which this court is no

14   doubt acquainted. However, Petitioner denies the legal existence of any presump-

15   tion of fact concluded by implication. Now then, the Administrative Procedure Act,

16   ch. 324, 80 Sta. 379, codified at 5 U.S.C. § 552(a); the Federal Register Act, 49

17   Stat. 500, § 5(a)(3), codified at 44 U.S.C. § 1505(a), provide the means of determining

18   what statutes in any given Act of Congress is applicable where. See "Act of Congress"

19   defined @ **Fed.R.Crim.P. Rule 54(c)**. If a statute has general application, then

20   the agency head responsible for carrying out whatever duties the statutes [1] prescribes

21   is required to promulgate implementing regulations disclosing all pertinent ele-

22   ments of said regulation and have it published in the Federal Register. This man-

23   date of Congres [inter alia] comports with "Due Process" requirements as to inform

24   any whom a statute may tend to adversely affect. See **Cervase v. Office of Federal**

25   **Register**, 580 F.2d 1166 (3rd Cir. 1978). Petitioner asserts that upon review by

26   this court, it will unequivocally find that the government failed to promulgate

27   _____

28   [1]  The United States Code was not enacted as a statute nor can it be construed as such, but [ex vi ter-
        mini] called a statute. See Murrell v. Western Union Tel. Co., 160 F.2d 787, 788 (5th Cir. 1947).

1  implementing regulations for 21 U.S.C. §§ 841(a)(1), 846, the predicate of

2  which the district court in Maryland ultimately rests its judgement.

3  Wherenow, the court is requested to take **Judicial Notice** of the contents of the

4  Federal Register, authority @ FRCP Rule 201; 44 U.S. Code, 1964 ed., § 7, 49 Stat.

5  502; Pub.L. 90-620, 82 Stat. 1276, codified at 44 U.S.C. § 1507. The contents of the

6  Federal Register **shall** be judicially noticed. **United States v. Floyd.** 477 F.2d

7  217 (10th Cir. 1973). Petitioner respectfully asserts that this court must, in the

8  interest of justice, seek to deter illegal conduct, **United States v. Payner**, 477 US

9  727, and in the absence of congressional authority or constitutional provision,

10  the federal judge may, enforce the federal guarantee. **Fay v. New York**, 332 US 261.

11  Does this court not agree, that Petitioner may only be subject to the obligations

12  of a statutes implementing regulations where once duly promulgated ?

13      Petitioner asserts that absent necessary promulgation, the court is without

14  authority to act upon the subject titles. While the Administrative Procedures Act,

15  § 551 et seq. of Title 5, are set up in terms of making information available to the

16  public, they are more than mere recording statutes whose function is solely to give

17  constructive notice to persons who do not have actual notice of certain agency rules;

18  they set up the procedure which must be followed in order for certain agency ru-

19  lings to be given the force of law, and unless the prescribed procedures are complied

20  with, the agency or administrative rule **has not been legally issued,** and consequent-

21  ly it is ineffective. **Graham v. Lawrimore**, D.C.S.C. 1960, 185 F.Supp. 761. Petitioner

22  cannot be held to answer for or perform the obligations of a judgement extending

23  from presumed violations of 21 U.S.C. §§ 841(a)(1), 846, unless he violates an imple-

24  menting regulation duly promulgated in the context of a criminal statute. See **Cali-**

25  **fornia Bankers Assoc.**, infra. However, as such dereliction of duty is common place

26  for the government, Petitioner stands wounded and buffeted, like Homer's Ajax, in

27

28

1 the Dark; and have not even the melancholy satisfaction of knowing by whom the
2 blows are given. See **1 Works of James Wilson 359-60** (J. Andrews ed 1896). "A
3 first tenet of our governmental, religious, and ethical tradition is the intrinsic
4 worth of every individual. ... It is a radical departure ... to subject a defined
5 class of person ... to a regime in which their right to liberty is determined by
6 officials ... unaccountable in the exercise of their power." **President's Commission**
7 **on Law Enforcement ...**, 443 F.2d (942) @ 952 n. 1. Equally sufficient is that sister
8 circuits and the Supreme Court has addressed this very issue on several occasions,
9 and have spoken in a loud voice, the agencies of the federal government must publish
10 enforcement regulations in the Federal Register before they can become law. **United**
11 **States v. Reinis**, 794 F.2d 506 (9th Cir. 1986). "It is well settled that "[t]he
12 rule making power granted to an administrative agency charged with the administration
13 of a federal statute is not the power to make law. Rather, it is '"the power to
14 adopt regulations to carry into effect the will of Congress as expressed by the
15 statute."'" **Porter v. Prudential Ins. Co.**, 470 F.Supp. 203. And in order to be valid,
16 regulations **must** "be consistent with the statute under which they are promulgated."
17 **Ernst & Ernst v. Hotchfelder**, 425 US 185. It is this Petitioner's particular high
18 and good fortune to be able to present such great issues before the immortal wisdom
19 of this Honorable court, and that you're power is greater than that which plagues
20 Petitioner, for I have a formidable opponent in the government and of course lack a
21 sponsor — individual liberty withers — in spite of glowing opinions and resounding
22 constitutional phrases. See **Flast v. Cohen**, 392 US, at 968 (1968). "When the judi-
23 ciary is no longer "a great rock" in the storm, as Lord Sankey once put it, when
24 the courts are niggardly in the use of their power and reach great issues only ti-
25 midly and reluctantly, the force of the Constitution in the Life of the Nation is
26 greatly weakened." **Flast**, supra. For similar views of current authority, see
27
28

17.

1  **California Bankers Assoc. v. Shultz**, 416 US 21, holding in the majority opinion

2  delivered by Chief Justice Rehnquist, ("Because it has a bearing on our treatment

3  of some of the issues raised by the parties, we think it **important** to note

4  that the Act's civil or criminal penalties attach **only** upon violations of regula-

5  tions promulgated by the Secretary; if the Secretary were to do nothing, the Act

6  itself would impose no penalties on anyone.") And at 5 U.S.C. § 552(a), we find

7  the oft inspiring congressional protection against complete disregard for the rule

8  making authority: "a person may not in any manner be required to resort to, or be

9  adversely affected by, a matter required to be published in the Federal Register

10 and **not so published.**"  Also see **United States v. Messer Oil Corp.**, 391 F.Supp.

12 557 (W.D. Pa. 1975); **United States v. Millsap**, 208 F.Supp. 511, @ 561 (1962).

13 As a general matter, the so called "legality principle" mandates that "conduct is

14 not criminal unless forbidden by law which gives advance warning that such conduct

15 is criminal." 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.1, at 271 (1986);

16 see also **Lambert v. California**, 355 US 225 (1957). Accordingly, Petitioner asserts

17 that his fifth and sixth amendment federal constitutional rights were violated as

18 the government by dereliction of duty failed to comply with the rule making authority.

19 Consequently, "it is well established that a litigant must clearly demonstrate that

20 he has suffered an "injury in fact" which must therefore be "concrete" in both a

21 qualitive and temporal sense." **Whitmore v. Arkansas**, 495 US 149. Furthermore, the

22 litigant must satisfy the redressability prong of the Art. III minima by showing that

23 the injury "is likely to be redressed by a favorable decision. Id., at 109 L.Ed 2d

24 145 (quoting **Simon v. Eastern Kentucky Welfare Rights Org.**, 426 US 26 (1917)).

25 "With respect to the requirement that an injury must be "imminent" in order to sup-

26 port a party's standing to sue, the concept of imminence although somewhat elastic,

27 cannot be stretched beyond its purpose, which is to ensure that the alleged injury

28 is not to speculative for purposes of Art. III of the federal Constitution — the

18.

1  injury is certainly impending." **Lujan v. Defenders of Wildlife**, 504 US 555.

2     In the case at bar, the government was/is completely unable to assert or

3  maintain a traceable injury to Petitioner's [presumed] illegal conduct. The "fact"

4  that the government failed to comply with the rule making authority, supra, remo-

5  ved any traceable injury to support the government's standing to have maintained an

6  action against Petitioner in federal court. Ergo, it is "impossible" for the go-

7  vernment to have sustained an "injury in fact" as its cause of action — 21 U.S.C.

8  §§ 841(a)(1), 846, is no law, as applied to Petitioner. And absent the required mi-

9  nima "standing" requirement, the government presented no "case or controversy" to

10  have invoked the court's judicial power, [et sic], the district court lacked juris-

11  diction of the subject-matter. One of the irreducible constitutional minimums of

12  standing is that there must be a casual connection between the injury and the con-

13  duct complained of — the injury has to be "fairly ... trace[able] to the challenged

14  action of defendant. ..." **Simon**, supra. No comparable justifiable assertion of stan-

15  ding exist, however, when no traceable injury is present. Wherefore, Petitioner

16  asserts that the government lacked standing to have maintained an action against

17  him in federal court, therefore, the district court lacked jurisdiction of the

18  subject-matter. Additionally, Petitioner asserts that he was prejudiced by counsels

19  deficient performance — by failure to object to the use of non-promulgated statutes

20  — rendered such proceedings unrealiable and fundamentally unfair. Consequently,

21  Petitioner was denied effective assistance of counsel, pre-trial and at the appellate

22  level.

23     Accordingly, Petitioner respectfully demands his immediate release from pri-

24  son, premises considered.

25

26

27

28

19.

1    Petitioner asserts that his position is not hostile, and the government

2    need **not** defend on pain of future suit for injuries.

### Relief Requested

Petitioner, with regard to Claim I, respectfully demands his immediate release from confinement, or in the alternative, for his sentence to be modified to reflect the sentencing range in accordance with the Sentencing Guidelines, absent the use of factors —— elements not considered by a grand jury nor charged in his indictment, **Premises Considered.**

Petitioner, with regard to Claim II, respectfully demands his immediate unconditional release from confinement, **Premises Considered.**

Dated this _9th_ day of _May_, 2001.

Respectfully submitted,

_Corey Lorenzo Woodfolk_
Corey Lorenzo Woodfolk
c/o Post Office Box [1000],
Lewisburg; near [17837], Pennsylvania

**EXHIBIT A**

**UNITED STATES COURT OF APPEALS**
FOR THE FOURTH CIRCUIT
LEWIS F. POWELL, JR. UNITED STATES COURTHOUSE ANNEX
1100 EAST MAIN STREET, SUITE 501
RICHMOND, VIRGINIA  23219-3517

PATRICIA S. CONNOR
CLERK

TELEPHONE
(804)916-2700

April 12, 2001

Corey Lorenzo Woodfolk
UNITED STATES PENITENTIARY
#30079-037
P. O. Box 1000
Lewisburg, PA 17837

Andrea L. Smith, Esq.
OFFICE OF THE U. S. ATTORNEY
6625 United States Courthouse
101 West Lombard Street
Baltimore, MD 21201

Re: 01-707 In Re:  Woodfolk
CR-93-419-JFM

Dear Movant and Counsel:

This office on this date docketed movant's motion for authorization for leave to file in the district court a second or successive application for relief pursuant to 28 U.S.C. 2254 or 2255.  The caption for the case and docket number as set forth above should be included on all subsequent papers filed with this Court in this matter.  If no certificate of service accompanied the motion for authorization, a copy of the motion for authorization with attachments is enclosed to respondent's counsel.

Yours truly,

PATRICIA S. CONNOR
Clerk

/s/ Diane H. Burke
By: _____
Deputy Clerk

EXHIBIT B

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
April 26, 2001

No. 01-707
CR-93-419-JFM

In Re: COREY LORENZO WOODFOLK

   Movant

- - - - - - - - -
O R D E R
- - - - - - - - -

  Movant has filed a motion pursuant to 28 U.S.C. Section 2244 for authorization to file a successive application for relief.

  The Court denies the motion.

  Entered at the direction of Judge Michael, with the concurrence of Judge Widener and Judge Niemeyer.

       For the Court,

       /s/ Patricia S. Connor
       ————————————————
         CLERK

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. JFM-93-0419 |
| | : | |
| v. | : | (Conspiracy to Distribute and |
| | : | Possess with Intent to |
| PHILIP EDWARD ROBERSON | : | Distribute Heroin, 21 U.S.C. |
| a/k/a "Mumin Sahib Abdullah" | : | § 846; Distribution of Heroin, |
| COREY LORENZO WOODFOLK | : | 21 U.S.C. § 841(a)(1);   Felon |
| a/k/a "Big Corey" | : | in Possession of a Firearm, |
| DONCARLOS WILLIAMS | : | 18 U.S.C. § 922(g)(1); |
| a/k/a "Dee" and "D-Nice" | : | Impeding Interstate Commerce, |
| COREY STEVEN JOHNSON | : | 18 U.S.C. § 1951; Aiding and |
| a/k/a "Little Corey" | : | Abetting, 18 U.S.C. § 2) |
| | : | |

ooo000ooo
### SECOND SUPERSEDING INDICTMENT

The Grand Jury for the District of Maryland charges:

Beginning on or about January of 1991 and continuing thereafter up to and including on or about January of 1994, within the State of New York, the State and District of Maryland, and elsewhere,

PHILIP EDWARD ROBERSON
a/k/a "Mumin Sahib Abdullah"
COREY LORENZO WOODFOLK
a/k/a "Big Corey"
DONCARLOS WILLIAMS
a/k/a."Dee" and "D-Nice"
COREY STEVEN JOHNSON
a/k/a "Little Corey"

the defendants herein, knowingly, intentionally and unlawfully did combine, conspire, confederate, and agree with each other and with Timothy Michael Shird, a/k/a "Bilal," Harold David Bruton, a/k/a "Bunchie," David Alonzo Williams, as well as persons known and unknown to the Grand Jury, to knowingly, unlawfully and intentionally distribute and possess with intent to distribute a kilogram or more of a mixture or substance containing a detectable

amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21 United States Code, §841(a)(1).

## METHODS AND MEANS OF THE CONSPIRACY

During the course of the conspiracy it was a method and means of facilitating the conspiracy to distribute heroin, among other methods and means, that the defendants did the following:

1. At all times relevant to this Indictment, **PHILIP EDWARD ROBERSON, a/k/a "Mumin Sahib Abdullah"** was the head of an organization distributing narcotic controlled substances, principally heroin. This organization distributed heroin in and around the Baltimore metropolitan area.

2. The organization distributed retail and wholesale quantities of heroin, and sometimes cocaine, through the use of "shops," or stash houses, locations used for the purpose of street distribution. This street distribution, including the resupplying of controlled substances and the collection of cash, was supervised at times by **PHILIP EDWARD ROBERSON, a/k/a "Mumin Sahib Abdullah," COREY LORENZO WOODFOLK, a/k/a "Big Corey," DONCARLOS WILLIAMS, a/k/a "Dee" and "D-Nice," and COREY STEVEN JOHNSON, a/k/a "Little Corey."** From time to time this organization used "trade names" to identify and differentiate their product from that of other organizations. "Trade names" used included "Strong As Steel," "Nice and Smooth" and "Python."

3. During the period of the conspiracy, the organization's shops and stash houses were located in the vicinity of Gold and

2

**24**

## COUNT 2

And the Grand Jury for the District of Maryland further charges that:

On or about February 18, 1993, in the State and District of Maryland,

**PHILIP EDWARD ROBERSON**
**a/k/a "Mumin Sahib Abdullah"**
**COREY LORENZO WOODFOLK**
**a/k/a "Big Corey"**
**DONCARLOS WILLIAMS**
**a/k/a "Dee" and "D-Nice"**

the defendants herein, did knowingly, intentionally and unlawfully distribute a quantity of a mixture or substance containing a detectable amount of heroin, a schedule I controlled substance.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

8

## COUNT 5

And the Grand Jury for the District of Maryland further charges that:

On or about March 11, 1993, in the State and District of Maryland,

**COREY LORENZO WOODFOLK**
**a/k/a "Big Corey"**

the defendant herein, did knowingly, intentionally and unlawfully distribute a quantity of a mixture or substance containing a detectable amount of heroin, a schedule I controlled substance.

21 U.S.C. §841(a)(1)
18 U.S.C. §2

11

## COUNT 7

And the Grand Jury for the District of Maryland further charges that:

On or about April 7, 1993, in the State and District of Maryland,

**COREY LORENZO WOODFOLK**
**a/k/a "Big Corey"**

the defendant herein, did knowingly, intentionally and unlawfully distribute a quantity of a mixture or substance containing a detectable amount of heroin, a schedule I controlled substance.

21 U.S.C. §841(a)(1)
18 U.S.C. §2

13

**35**

## COUNT 10

And the Grand Jury for the District of Maryland further charges that:

On or about January 10, 1994, in the State and District of Maryland,

### COREY LORENZO WOODFOLK
### a/k/a "Big Corey"

the defendant herein, having been previously convicted on or about March 14, 1987, of a crime punishable by imprisonment for a term exceeding one year, to wit: Distribution of Cocaine, in violation of Article 27, Section 286, of the Maryland Annotated Code, did knowingly and unlawfully possess a firearm, that is a .357 Magnum, Ruger Security Six Revolver, serial number 154-04372, in and affecting commerce.

18 U.S.C. § 922(g)(1)
18 U.S.C. § 2

*Lynne A. Battaglia / AL*
Lynne A. Battaglia
United States Attorney
District of Maryland

A TRUE BILL:

*Mary Gibbs*
FOREPERSON

*April 5, 1994*
Date